UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CLAUDE MOSLEY, JR., ) | |
| ) | |
| Petitioner, ) | 2:23-CV-00115-DCLC-CRW |
| ) | 2:21-CR-00004-DCLC-CRW |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1; Criminal Docket ("Crim.") Doc. 457].[1] The United States (the "Government") responded in opposition [Doc. 6] and Petitioner replied [Doc. 7]. Thus, this matter is ripe for review. For the reasons stated below, Petitioner's motion [Doc. 1; Crim. Doc. 457] is **DENIED**.

**I. BACKGROUND**

On October 13, 2021, the grand jury returned a Superseding Indictment charging Petitioner with a conspiracy to distribute 50 grams or more of methamphetamine, among other charges [Crim. Doc. 20, pgs. 1–2]. Attorney Jonathan S. Cave ("Cave") represented Defendant [Crim. Doc. 9]. On April 13, 2022, Petitioner pleaded guilty to that offense [Crim. Docs. 192, 194]. During this time, Petitioner had charges pending in state court based on the same conduct [Crim. Doc. 284, ¶¶ 100–01, 103–04]. He was also serving a probationary sentence in Hawkins County after being convicted of driving on a revoked license, evading arrest, and theft [Crim. Doc. 284,

---

[1] Citations to the record refer to Civil Case No. 2:23-CV-115 unless otherwise stated.

1

¶¶ 89, 95]. Petitioner asserts that attorney Jefferson Fairchild ("Fairchild") represented him in state court "on a case in this superseding indictment" and "in a matter in which [he was] on probation" [Doc. 1, pgs. 4–5]. Attorney Fairchild also represented co-defendant Travis Douglas Adams in the underlying criminal case [Crim. Doc. 67].

The Presentence Investigation Report ("PSR") was disclosed on June 15, 2022 and calculated Defendant's guideline range to be 292 to 365 months [Crim. Doc. 284, ¶ 147]. At sentencing, the Court departed from the bottom of that range and sentenced Defendant to 262 months' imprisonment [Crim. Doc. 367, pg. 2]. The Court entered Judgment on July 27, 2022, [Crim. Doc. 367], and Petitioner did not file a direct appeal. Instead, he filed the present motion by placing it in the prison mailing system on August 22, 2023 [Doc. 1, pg. 12].

## II.  LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate a sentence upon a finding "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]" 28 U.S.C. § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner must establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the

rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

### III. ANALYSIS

#### A. Timeliness

At the outset, the Government contends Petitioner's motion is untimely [Doc. 6, pg. 3]. A one-year statute of limitations applies to § 2255 motions. 28 U.S.C. § 2255(f). That one-year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed . . . ;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, . . . ; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Here, Petitioner does not assert any government-created impediment to making the motion, any newly recognized right, or any discovery of claims which due diligence would not have previously revealed. "[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004). Under Fed.R.App.P. 4(b)(1)(A), that period is fourteen days after the entry of judgment. Fed.R.App.P. 4(b)(1)(A). Thus, the limitations period ran from the date Petitioner's judgment became final.

Here, Petitioner's judgment entered on July 27, 2022, [Crim. Doc. 367], and Petitioner did not appeal. Thus, Petitioner's judgment became final on August 10, 2022. The § 2255(f) limitations period expired one year later on August 10, 2023. But Petitioner did not place his

3

Case 2:23-cv-00115-DCLC-CRW   Document 9   Filed 06/28/24   Page 3 of 10   PageID #: 30

motion in the prison mail system until August 22, 2023, [Doc. 1, pg. 12], so the motion is time-barred.

Petitioner asserts he had sent a previous mailing within the time limit, so his motion is timely [Doc. 1, pg. 11]. When a § 2255 motion would otherwise be untimely, a court may equitably toll the limitations period under limited circumstances. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001), *abrogated on other grounds by Holland v. Fla.*, 560 U.S. 631, 649 (2010). "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)). To show equitable tolling is appropriate, Petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way[.]" *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Here, Petitioner fails to show equitable tolling is appropriate. He asserts he placed a filing in the mail on July 7, 2023 [Doc. 7, pg. 1]. But no such mailing appears on the Court's docket. He claims the delay resulted from frequent lockdown periods with no access to telephone or mail [Doc. 1, pg. 11]. But he does not explain when or how long he was under lockdown, so the Court cannot evaluate whether his efforts were diligent. And in any event, "placement in lockdown and lack of access to legal materials are generally not extraordinary circumstances warranting equitable tolling[.]" *Gonzalez v. United States*, No. 20-5407, 2021 WL 10352005, at *2 (6th Cir. June 29, 2021) (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751–52 (6th Cir. 2011)). Because Petitioner's motion is untimely and he fails to show equitable tolling is appropriate, the Court could deny his motion on that basis alone.

**B. Merits**

Nonetheless, because the motion lacks merit, the Court will also address the substance of Petitioner's motion. Petitioner asserts two grounds for relief under § 2255: one for "misconduct" against attorney Cave and one for ineffective assistance of counsel under the Sixth Amendment [Doc. 1, pgs. 4–5]. Because the grounds overlap, the Court addresses them together.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right is the right not merely to representation but to effective representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a petitioner contests his sentence by claiming ineffective assistance of counsel, he must satisfy the familiar *Strickland* test—a two-pronged test that requires a showing of deficient performance and resultant prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Specifically, a petitioner must establish that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 694).

Under the first *Strickland* prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). The petitioner must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018) (quoting *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)). Still, a review of counsel's performance must be highly deferential and requires the courts to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v.*

5

*Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). As to the second "prejudice" prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Griffin*, 330 F.3d at 736 (quoting *Strickland*, 466 U.S. at 694).

Petitioner first argues that attorney Cave had a conflict of interest [Doc. 1, pgs. 4–5]. "[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1980)).[2] But the presumption only applies when the petitioner shows "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* "In order to establish a conflict of interest, [a] defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (quoting *United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995)). "There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual significant conflict." *Id.* (quoting *Hopkins*, 43 F.3d at 1119) (internal quotation marks omitted). The petitioner must show "not only a conflict but also that the conflict caused the attorney to make bad choices for his client." *Id.* Petitioner "must make a factual showing of inconsistent interests and demonstrate that [his] attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Ball v. United States*, No. 17-2495, 2024 WL 659981, at *6 (6th Cir. Feb. 16, 2024) (quoting *Moss v. United States*, 323 F.3d 445, 463 (6th Cir. 2003)).

---

[2] On a § 2255 motion, the *Cuyler* standard applies to conflicts from concurrent representation and in some "atypical" cases of successive representation. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 350–51 (6th Cir. 2006) (citing *Mickens v. Taylor*, 535 U.S. 162 (2002) and *Moss v. United States*, 323 F.3d 445 (6th Cir. 2003)). Neither party asserts counsel was under a conflict from successive representation, so the Court applies the *Cuyler* standard to Petitioner's conflict allegations.

6

Here, Petitioner alleges Cave was conflicted because Cave withdrew from representing him in a different case ten years before this one [Doc. 1, pg. 5]. He claims "whatever [Cave's] reason then should still have held" in the present case [Doc. 1, pg. 5]. But he alleges no facts showing that Cave had "inconsistent interests" in representing him in this case.

Petitioner argues Cave should have objected to attorney Fairchild's representation of Petitioner in state court while representing a co-defendant in this federal case [Doc. 1, pgs. 4–5]. Though not directly on point, *Ball* presented a similar fact pattern. There, the petitioner's attorney in *federal* court was representing a federal co-defendant on separate charges in *state* court. 2024 WL 659981, at *2. The petitioner argued his federal attorney withheld evidence, failed to investigate, and failed to cross-examine and contact witnesses because he was representing the co-defendant elsewhere. *Id.* at *6-*8. He alleged his attorney advised the co-defendant to cooperate against him. *Id.* at *7. But the Sixth Circuit examined each of the petitioner's claims and found he had failed to show the purported conflict adversely affected him. *Id.* at *8.

Here, Petitioner faces a hurdle absent in *Ball*. In *Ball*, the petitioner had at least a colorable argument—though an ultimately unsuccessful one—that his counsel had a conflict in his federal case because his loyalties were actually divided between the petitioner and a co-defendant. By contrast, Petitioner does not allege that his federal attorney, Cave, ever represented a co-defendant. Instead, Petitioner's complaint centers on the alleged conduct of attorney Fairchild, who represented him in *state* court, not federal court [Doc. 1, pgs. 4–5]. Petitioner claims Cave should have alerted the Court to Fairchild's representing his co-defendant in federal court and Petitioner in state court [Doc. 1, pg. 5]. But Cave's failure to object to the purported conflict does not establish that Cave himself was conflicted. Thus, the Court will not presume that Petitioner suffered prejudice. Petitioner fails to show Cave's failure to object to Fairchild's representation

7

constituted deficient performance, and he has not shown a reasonable probability the outcome of the proceedings would have been different had Cave objected or Fairchild been removed.

Petitioner also complains that "others in [his] case received much lower sentences with the same plea and similar records," [Doc. 1, pg. 4], without specifying which others he is referring to. Initially, he fails to allege how his attorney's conduct resulted in a higher sentence than he would have otherwise received. In any event, "[c]onsidering uniformity between co-defendants' sentences . . . is not required by the Sentencing Guidelines or the § 3553(a) factors." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Instead, "[s]ubsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *Id.* (emphasis added). Because the Court was required to consider national disparities, not uniformity between Petitioner's sentence and those of his co-defendants, Petitioner cannot show constitutionally deficient performance or resulting prejudice simply by pointing to co-defendants who received lesser sentences.

Lastly, Petitioner asserts for the first time in his Reply that "the Government used [his] own attorney in their case against [him]" [Doc. 7, pg. 1]. Initially, a reply brief is not the place to raise new claims. *See* Local Rule 7.1(c) ("A reply brief . . . shall directly reply to the points and authorities contained in the answering brief."). In any event, even if Petitioner's motion could be construed as asserting a claim for prosecutorial misconduct, Petitioner alleges no facts to support such a claim. "[T]he appropriate standard of review for [a claim of prosecutorial misconduct] on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). To succeed on such a claim, a petitioner must show the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

8

*Id.* (quoting *Donnelly*, 416 U.S. 637).

Here, Petitioner has alleged no facts to show that the prosecution took actions that infected the proceedings with unfairness. He contends "Mr. Cave told [Petitioner] he informed [AUSA] Swecker" that his co-defendant's attorney was representing him in state court, and that "the Court . . . was never told" [Doc. 1, pg. 5]. But as explained, Petitioner fails to show that attorney Fairchild's representation of a co-defendant and attorney Cave's failure to object to that representation caused Petitioner any prejudice. Thus, even if the claim were not waived, it would still fail.

## IV. CONCLUSION

For these reasons, Petitioner's motion [Doc. 1; Crim. Doc. 457] is **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not conclude that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a

9

certificate of appealability as to each claim raised.

A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker<br>United States District Judge